Filed February 18, 1896.

---

No. 1,993.

## MOESCHKE v. THE STATE.

CRIMINAL LAW.—*Killing Diseased Animal for Food.—Affidavit and Information.*—An affidavit and information under section 2164, R. S. 1894, making it an offense for any person to kill for the purpose of sale, any sick, diseased, or injured animal, need not allege that the meat was to be sold within the State.

SAME.—*Killing Diseased Animal for Food.—Affidavit and Information.*—An information charging that defendant did "knowingly" kill for the purpose of selling for food sick, diseased, and injured animals, sufficiently shows that defendant knew them to be sick, diseased, or injured at the time of the killing, and that he knew of the purpose to sell them for food.

From the Lake Circuit Court.

*J. Kopelke*, for appellant.

*W. A. Ketcham*, Attorney-General, *M. Moores* and *W. C. McMahan*, for State.

REINHARD, J.—The appellant was prosecuted by affidavit and information charging him with killing animals for the purpose of selling the meat thereof for food. A jury trial resulted in a conviction, a fine of $500, and imprisonment in the county jail for the period of four months. From the judgment rendered upon this verdict, this appeal is prosecuted.

The first alleged error relates to the sufficiency of the affidavit and information upon motion to quash, and in arrest of judgment.

The charge is, that the appellant, on the 10th day of October, 1895, at the county of Lake, State of Indiana, "did, then and there, unlawfully, knowingly and wrongfully kill, for the purpose of selling for food, certain sick, diseased and injured animals, to-wit, horses, contrary to the form of the statute," etc.

The prosecution is based upon section 2164, R. S. 1894 (section 2070, R. S. 1881), which reads as follows:

"Whoever kills, for the purpose of sale, any sick, diseased or injured animal; or who sells, or has in his possession with intent to sell, the meat of any such sick or injured animal, shall be fined not more than $500, nor less than $50, to which may be added imprisonment in the county jail not more than six months."

The appellant's learned counsel urges that the charge is defective, because of a failure to state that the meat was to be sold within the State of Indiana. On the face of the statute there is no provision that the meat of the diseased animal must be intended for sale for the pur-

pose of food, although by a decision of the Supreme Court, concurred in by a majority of the judges, it was held that to constitute an offense under this statute, it must be charged and proved that the meat from such animals was intended for food. *Schmidt* v. *State*, 78 Ind. 41. This is as far as the decisions in our state go upon the subject of the necessary averments of an information under this statute, and we are not willing to read into the statute still other requirements not contained therein. See *Brown* v. *State*, 14 Ind. App. 24.

Appellant's counsel cites no authority in support of his contention that the charge should embrace a statement that the meat was intended to be sold in this State, but argues that inasmuch as it appears from the original act of which the above section is a part (acts 1881, p. 209, section 161), that the entire statute was designed to punish only offenses against public health and nuisances, which are things usually done wholly within the State, therefore, the section under consideration must be construed to mean similar offenses. Counsel further says :

"The underlying purpose of the act under consideration was to prevent the sale of unwholesome meat for food. The killing of the diseased animals would of itself be an act worthy of commendation; it becomes criminal only when it is done as the first step toward selling the meat for food, and is made a crime only for the purpose of easier detection, punishment and, therefore, prevention. Now, if diseased meat was sold outside of our State, our Legislature could not punish the act. Has it undertaken to punish the preparatory and initiatory step, the killing of diseased animals for the purpose of selling their meat for food, outside of the State? There is nothing in the statute to indicate such a purpose. The ordinary rules of construction exclude

it.   No act of ours, that I can now recall, indicates any legislative policy in this State to regulate the conduct of its inhabitants with regard to things that they may do outside of the State."

In this view of counsel we are unable to concur.   That the statute in question was intended to prohibit and punish the commission of a class of offenses which usually militate against health or decency, may be granted, and yet we do not see how from the circumstances the conclusion can be reached, that by the provisions of this section it was intended to protect only the inhabitants of the State of Indiana, or persons being therein at the time of the commission of the offense. Without some clear authority to the contrary, we should be loth to assume that the law-makers purposed any such invidious discrimination against the people of other states or countries as to cut them off from any protection that might incidentally inure to them from the enforcement of this law.   It may be, as counsel contends, that the primary object of every such statute is the protection or benefit of people within the boundary lines of the State, but it cannot be said that in such instances it is not capable of enforcement, because to do so would be to thwart its original purpose, although it be shown that the overt act which it was intended to punish was committed within the jurisdiction of the State.

We have a statute forbidding and punishing the poisoning of springs, etc., with intent to kill or injure any human being.   R. S. 1881, section 1909.   If a person should throw poison into a running spring, situated near the borders of the State, with the intention of killing some one residing beyond the State line who might use the water, does that fact constitute a defense to a prosecution of the offender?   We do not think so. And yet it might be argued with equal plausibility as it

is here contended, that as the law was intended only for the protection of the people of our own State, no offense was committed under it, unless the poisoning was done with intent to kill or injure some one within the State.

The primary object of the law under construction is to prohibit the killing of diseased animals in this State when the meat of such animals is intended for food. Where and when the meat is to be sold or used for such purpose is a secondary consideration and need not be charged. The description of the offense is complete when it is charged that the diseased animals were killed and that their meat was intended to be sold for food.

But it is further insisted that the charge is bad because it does not sufficiently show that the appellant knew the animals to be sick, diseased or injured at the time they were killed, or that he had or knew of any purpose to sell them for food. This contention cannot be upheld. The charge is that the appellant did "knowingly" kill for the purpose of selling for food the animals mentioned. The adverb "knowingly" qualifies, not only the verb *did kill*, but everything following the same and connected therewith, and will supply the place of a positive averment that the accused knew the facts stated subsequent to the use of said word. See *Brown* v. *State, supra.* We think the affidavit and information are sufficient.

The only remaining error relates to the sufficiency of the evidence to sustain the verdict. It is strenuously insisted by counsel for appellant that there is absolutely no evidence of an intention to sell the meat of the diseased animals for food. We think otherwise. A careful reading of the evidence convinces us that it was amply sufficient to warrant a conviction under the

charge made. No good purpose would be subserved by setting out even the substance of the evidence.

These are all the errors relied upon, and we find none for which the judgment should be reversed.

Judgment affirmed.

