## 8311. PENINSULAR NAVAL STORES COMPANY *v.* THE STATE.

1. A declaration in attachment, filed under section 1823 et seq. of the Civil Code of 1910, alleges with sufficient definiteness the defendant's knowledge of the adulteration of spirits of turpentine, when it follows the language of section 1824.

2. "Verdicts are to have a reasonable intendment, and are to receive a reasonable construction;" and "where a verdict may by a reasonable construction be understood and a legal judgment entered thereon, it is sufficient."

3. "The market price of a commodity is the actual price at which it is commonly sold. The price may be fixed by sales in the market at or about that time. If no sales can be shown on the day, due recourse may be had to sales before or after that day, and for that inquiry a reasonable range in point of time is allowed."

4. There was nothing harmful to the plaintiff in error in any of the rulings on the admission of evidence, complained of in the 10th, 11th, and 12th grounds of the motion for a new trial.

DECIDED JULY 19, 1917.

Forfeiture; from Chatham superior court—Judge Charlton. April 10, 1916.

*Hitch & Denmark, John G. Kennedy,* for plaintiff in error.

*Walter C. Hartridge,* solicitor-general, *Bouhan & Herzog,* contra.

BLOODWORTH, J. Under section 1823 et seq. of the Civil Code of 1910, the solicitor-general of the eastern circuit filed information in the name of the State of Georgia for the purpose of having two lots of spirits of turpentine, one containing ten and the other sixty-eight barrels, forfeited, and, after the same was seized under attachment, filed a declaration on the attachment. The turpentine was claimed by the Peninsular Naval Stores Company, which intervened, filed plea and answer, and gave bond. The defendant moved to strike paragraphs 1 and 2 of the declaration. This motion was overruled, and exceptions pendente lite were filed, and error is assigned thereon.

1. Paragraphs 1 and 2 of the petition each allege that the defendant knowingly had in its possession a certain number of barrels of spirits of turpentine, marked "D. G. Co.," under date of February, 1913, the said spirits of turpentine being stored at the Seaboard Air-Line Naval Stores yard in Chatham county, for sale, consignment, or shipment, which said barrels of spirits of turpentine were adulterated without being marked on the outside of said barrels with the words and in the manner prescribed by the act of the legislature of the State of Georgia, approved August 27, 1913. These paragraphs were demurred to, "upon the ground that the same do not allege with sufficient definiteness and certainty the defendant's knowledge of the adulteration of the spirits of turpentine therein described, as required by the act approved August 17, 1903, and codified in section 1824 et seq. of the Code of Georgia of 1910; the word 'knowingly' as used by the pleader having reference apparently to defendant's knowledge of its possession of the turpentine, rather than to defendant's knowledge of the alleged adulteration of said turpentine." There was no error in refusing to strike these paragraphs. The declaration follows the language of the act. Civil Code (1910), § 1823 et seq.; Brown *v.* State,

14 Ind. App. 24 (42 N. E. 244); Moeschke v. State, 14 Ind. App. 393 (42 N. E. 1029-1030).

2.  The jury returned a verdict as follows: "We, the jury, find for the plaintiff against the Peninsular Naval Stores Company. That is to say, we believe that the turpentine attached was adulterated. We place the value of amount so attached at 3,600 gallons at 26 cents per gallon market price at that date. We estimate the amount at $936.00—dollars. Henry G. Greene, Foreman." Thereafter the defendant filed a motion in arrest of judgment, and a motion to set aside the verdict, on the grounds that the verdict was too uncertain and indefinite to form any legal basis for judgment, and that it was not a legal finding on the facts, and was not responsive to and did not cover the issues raised by the pleadings. The plaintiff filed a motion to reform the verdict, and the defendant objected to this motion. These three motions will be treated together. If the verdict as rendered is good and valid, it settles the questions raised by the three motions. Under the Civil Code (1910), § 5927, "Verdicts are to have a reasonable intendment, and are to receive a reasonable construction." In *Williams* v. *Brown*, 57 *Ga.* 304, the 4th headnote is as follows: "Where a verdict may, by a reasonable construction, be understood, and a legal judgment can be entered thereon, it is sufficient." See also *Monk-Sloan Supply Co.* v. *Quitman Oil Co.*, 10 *Ga. App.* 390 (73 S. E. 522).

The last paragraph of the petition in this case is as follows: "That the plaintiff alleges the value of said spirits of turpentine to be the sum of fifteen hundred ($1,500.00) dollars, [for?] which amount, together with costs of said proceedings, he prays a judgment may be recovered against said Peninsular Naval Stores Company as principal and said United States Fidelity & Guaranty Company as security." Applying the rule laid down in the *Williams* case just quoted, in the light of the code section, supra, and the pleadings, we are convinced that the verdict can be easily understood, and a legal judgment entered thereon. The verdict clearly means what it states after being reformed; that is, "We, the jury, find for the plaintiff against the Peninsular Naval Stores Co. . . . the sum of $936.00." "A canon of construction often applied to verdicts is that all surplusage may be disregarded. The maxim utile per inutile non vitiatur saves a verdict from the

taint of any ambiguity or uncertainty brought about by rejectable surplusage." *Monk-Sloan* case, supra.   See *Southern Railway Co. v. Oliver*, 1 *Ga. App.* 734 (58 S. E. 244) ; *Geer* v. *Thompson*, 4 *Ga. App.* 756 (3) (62 S. E. 500).   While the words, "That is to say, we believe that the turpentine attached was adulterated," add nothing to the verdict, their insertion does not render it invalid, and they can be stricken from the verdict as surplusage.   The verdict covers the issues made by the pleadings as shown by the prayer of the petition, quoted above.   In his order allowing the verdict reformed the presiding judge said : "It seems to me that the verdict not only is susceptible of being put in proper shape, but [it] is questionable if it even needs reforming.   The finding of the jury was certainly against the defendant, and the sum named is beyond doubt."   (From this order it appears that no objection was urged to the insertion of the name of the surety in the verdict.)   We do not think there is any question as to the verdict as rendered being legal and definite; and therefore the judge did not err in refusing to arrest the judgment or set it aside, and no injury resulted from "reforming" the verdict.

3. When read in connection with the entire charge, there is no error in any of the excerpts complained of.   We need not refer to grounds 5, 6, 7, and 8 of the motion for a new trial.   In the 9th ground it is alleged that the court erred in charging the jury as follows : "If you should find for the plaintiff, you would ascertain first what value, if any, has been shown.   Take the case and consider it and see what has been shown as to the value of this stuff at the time it was seized—what was the market value here.   If there was no market value for it, the jury could consider the prices obtained for adulterated stuff by the sheriff at public sales."   It is alleged that this was error for the reason that, "with reference to the value, the jury should have been restricted to the proven market value of adulterated turpentine at the time and place of the seizure." Market value is the price established by public sales in the way of ordinary business, as of merchandise.   Sloan *v*. Baird, 162 N. Y. 327 (56 N. E. 752) ; Murray *v*. Stanton, 99 Mass. 345.   The market price of a commodity is the actual price at which it is commonly sold.   The price may be fixed by sales in the market at or about that time.   If no sales can be shown on the day, due recourse may be had to sales before or after that day, and for that inquiry a rea-

sonable range in point of time is allowed. Douglas v. Merceles, 25 N. J. Eq. 144; Beach v. Raritan &c. R. Co., 37 N. Y. 457. If there is no market price, some other criterion of value must be adopted. Atchison &c. R. Co. v. Stanford, 12 Kansas, 354 (15 Am. R. 362). Applying these rules, it will be seen that there was no error in the charge complained of in this ground.

4. In the 10th ground complaint is made that the court erred in allowing the witness King to testify as follows: "I examined both lots in my capacity as supervising inspector of naval stores. I found this stuff to be adulterated with kerosene oil—mineral oil." This was not error. The witness qualified as an expert. The evidence shows that he testified: "I have had about forty years experience in the naval stores and turpentine business in every capacity from turpentine operator up to my position. I have been distiller and producer, and am thoroughly familiar with turpentine." Even if it was error to admit this testimony, its admission could not have been harmful; for this same witness testified, without objection: "All of this turpentine was adulterated except about six barrels; I think upon complete analysis these were free from adulteration. There were 72 barrels adulterated." Even if there was error in admitting the testimony of King and Meldrim, as complained of in the 11th and 12th grounds of the motion for a new trial, it could not have been harmful to the defendant, for, with this evidence out, the evidence of King that the market value for pure spirits of turpentine was about 36 cents a gallon at that time was in without objection, and the witness Wilson swore: "The difference between the market value of pure spirits of turpentine and the value of adulterated spirits of turpentine is from 8 to 10 cents a gallon." Under this evidence, the smallest price per gallon a jury could have found would have been the amount stated in the verdict, to wit, 26 cents.

In connection with the 12th ground the plaintiff in error urged that "The witness should not be allowed to testify as to the value of the stuff sold at other times, and his testimony should be confined to the market value of this particular lot of turpentine at the time it was seized." In fixing market value some latitude must be allowed, especially as to articles that are not sold daily or regularly on the market. See Douglas v. Merceles, and Beach v. Raritan &c. R. Co., supra.

No error of law was committed, and the evidence authorized the verdict.

*Judgment affirmed.   Broyles, P. J., and Jenkins, J., concur.*