## FRASER *v.* JARRETT.

1. Under our statute of frauds a contract for the purchase of lands need only be signed by the party against whom the contract is sought to be enforced.

2. When a buyer submits a written offer to the owner of lands for the purchase thereof, which in all respects meets the requirements of the statute of frauds, which offer the owner declines to accept unless a material change in one of the terms thereof is made, which change is made in such offer by a real-estate agent negotiating the sale, without authority from the buyer, after which the owner in writing accepts the offer so changed, and after such change and acceptance the buyer orally confirms and ratifies said change so made by such agent, the contract of sale embraced in such offer becomes complete and binding upon the owner by her written acceptance of the terms of such offer, although the offer was signed for the plaintiff under an oral authorization only, and the confirmation by the plaintiff of the same as changed was in parol, especially when the latter brings suit to enforce the contract.

3. In order to entitle the plaintiff to specific performance of a contract for the purchase of land, the purchaser must make an unconditional tender of the purchase-money due; but tender by the vendee before suit is excused if the vendor, by conduct or declaration, proclaims that, if a tender should be made, acceptance would be refused.

4. An instruction to the jury that if a tender was made without any condition except the request that the defendant comply with the contract of sale, the same would be certain and unconditional, and entitle

the plaintiff to a verdict for specific performance, was erroneous; but under the facts of this case does not require the grant of a new trial

5. A demurrer to the whole of an answer is properly overruled if it raises any issuable fact to be tried by the jury.

6. A verdict finding that the plaintiff is entitled to specific performance, and to receive rents from a given date, in the amount of $2,205.93, less operating expenses covering the period for which such rents were given, is void for uncertainty, so far as the money part of the verdict is concerned, the jury failing to find the amount of such operating expenses, and there being nothing in the pleadings and evidence by which the same can be fixed.

7. Surplusage in a verdict can be disregarded, and thus save it from the taint of any ambiguity or uncertainty brought about by such rejectable surplusage; but we can not say in this case that any part of this verdict is surplusage.

No. 2810. MAY 16, 1922.

Specific performance. Before Judge George L. Bell. Fulton superior court. July 15, 1921.

Mrs. M. B. Jarrett filed her petition against Mrs. Ida D. Fraser for specific performance of this contract, to wit:

" State of Georgia, County of Fulton.

" Atlanta, Ga., April 19, 1920.

" The undersigned agrees to offer to buy through Evans & Dodd, Agents, the following described property, to wit: All that tract or parcel of land lying and being in the city of Atlanta, Ga., and more particularly described as follows: Apartment house containing four apartments. Situated on the south side of East Seventh street, between Peachtree street and Juniper street, and is known as No. 91 East Seventh street, according to the present numbering in the city of Atlanta, Ga.; size of lot being about 77 x 66, and containing a 4-apartment house, known as the Fraser Apartments, for the sum of thirty thousand & 00/100, $30,000.00, dollars, to be paid as follows:

" Assumption of loan due in about 5 yrs. 6 %   $ 8000.00
" Assumption of loan due in about Jan. 1921 yrs. 8 %   4000.00
" I agree to give my note payable on or before 1 yr. 7 %   4000.00
" I agree to give my note payable on or before 2 yrs. 7 %   3000.00
" I agree to give my note payable on or before 3 yrs. 7 %   4000.00
" I agree to pay the balance in cash to the amount of   7000.00

      $30,000.00

" It is agreed that the vendor shall furnish good and marketable

title to said property, and purchaser shall have a reasonable time in which to investigate the same. In the event the title is objected to, the vendor shall be furnished with a written statement of all objections, and be allowed a reasonable time thereafter in which to furnish a valid title. It is agreed that such papers as may be legally necessary to carry out the terms of this contract shall be executed and delivered by the parties at interest, as soon as the validity of the title to said property has been established.

### SPECIAL STIPULATIONS.

" All interest, rents, and insurance to be prorated at the closing of the deal. Heating and water system connection with No. 182 Juniper Street to be disconnected at the expense of Mrs. Fraser, the present owner. This proposition is open for acceptance until the end of the 20th day of April, 1920.

Mrs. M. B. Jarrett, By H. H. Jarrett, Agent.

" The above proposition is hereby accepted, this the 19th day of April, 1920.                                    Mrs. Ida D. Fraser.

### CONDITIONAL EARNEST-MONEY RECEIPT.

" Received of Mrs. M. B. Jarrett the sum of two hundred fifty dollars as earnest-money and part payment of purchase-price of property, as described in the above copy of original proposition. Said earnest-money is to remain with Evans & Dodd, Agents, during the term of said proposition, and is subject to the acceptance, by the owner, of said proposition, and is to be returned to the purchaser in the event proposition is declined. This the 19th day of April, 1920.

Evans & Dodd, Agents."

Petitioner had the title to said property examined by her attorney, and the same was found good. She, on April 28, notified defendant that she was ready to close out the sale. After several attempts on the part of Evans & Dodd, of herself, and her attorney to arrange a meeting with defendant, for the purpose of closing the sale, defendant requested a conference with W. S. Dodd, of said firm, and petitioner's attorney. This conference was had on May 8, 1920. Defendant and her attorney at said conference stated that before she would close the sale with petitioner, a bond would be required of petitioner to pay in full, on January 1, 1921, the

loan of $4,000 to Lilla M. Ayer. Then and there petitioner, through her attorney, made an unconditional tender of the sum of $7,000 in United States currency to defendant, being the amount of cash payment provided for in the above contract; and then and there tendered her three notes for the deferred payments therein provided for. Defendant declined to accept the money or the notes, and stated that she would not close the sale unless a bond for the payment, on January 1, 1921, of the loan to Lilla M. Ayer was executed. Subsequently, through her attorney, she notified defendant, that, although there was no provision in the contract of sale requiring it, she would sign a written agreement with defendant to pay the loan of $4,000 on the first day on which a payment on the principal of said loan could be made by the terms of the loan due, to wit, on April 28, 1921, Defendant was again required to close the sale on these terms, and again refused. Petitioner has been offered $35,000 for this property, and is informed and believes an offer of the same amount has been made to the defendant since the execution of the contract of sale between them. This is the reason why the defendant refuses to close the sale. Petitioner duly authorized her agent, H. H. Jarrett, to sign her name to said contract, and has duly ratified the execution of said contract. Petitioner is ready, able, and willing to comply with the terms of said contract, and is keeping $7,000 on current deposit in ·bank for the purpose of making said cash payment. Said sum is not drawing any interest, and she is being damaged financially the amount of the interest which she could secure from investment of said sum since it has been so deposited. She has paid her attorney, for examination of the title to said property, $150. She has received a bona fide offer of $35,000 for said property; and if defendant is not made to comply with said contract of sale, she will be damaged in the sum of $5,000, as the profit which she would make on a resale of said property. She prays that the defendant be required specifically to perform the contract of sale, and to convey the premises therein, in accordance with the terms thereof. She prays for damages if the defendant for any reason should be unable specifically to perform said contract.

The defendant answered the petition, admitting that she signed a contract which was presented to her by Evans & Dodd; but alleging that the offer of sale contained in said contract was not

accepted by her; and that said contract was changed before she signed the same. She admits that she and her attorney were present at a conference on May 8, 1920, and that she requested the petitioner to give her bond to insure that petitioner would carry out the obligations contained in said contract; but she did not make this as a condition to the closing of the trade. She admits that $7,000 in cash and three notes were tendered to her on this occasion, but denies that the same was an unconditional tender. When plaintiff refused to give the bond requested, she then agreed that if plaintiff would insert a provision in the notes declaring any balance of unpaid notes due and collectible in the event this second loan was not taken up in January, 1921, she would execute the contract. This the plaintiff declined. Defendant denies that she had received any other offer for the property, and that the reason why she refused to carry out this contract was on account of such offer. She denies that plaintiff is entitled to specific performance, that petitioner has ratified said contract, and that she made a tender in the terms thereof. On April 19, 1920, Evans & Dodd presented to defendant a contract for the sale of the apartment-house in question. This contract contained, among other things, this provision, to wit: " Assumption of a loan due in about a year and a half at 8%, $4,000." This defendant refused to sign said contract, and stated that she was unwilling to have her purchase-money notes as a third lien on said property for a period of a year and a half. She told Evans & Dodd that this loan could be taken up in January, 1921, and that she was unwilling to sign the contract unless it was agreed that this second loan of $4,000 should be taken up at that time. The contract, when presented to her, was signed, " Mrs. M. B. Jarrett, By H. H. Jarrett, Agent," and before defendant signed it Evans & Dodd changed its terms so as to make it read, " Assumption of the second loan of $4,000 in January, 1921." This contract as changed has never been ratified° by the plaintiff or by her agent; and neither one has ever agreed to take up and discharge the second loan of $4,000 in January, 1921. The contract which petitioner seeks to enforce in this case is not a valid, binding, and enforceable contract, and she is not bound by the terms thereof. The same was not a mutual contract binding on both parties to this suit; and for these reasons she is not liable for specific performance or damages.

Plaintiff demurred to the answer of the defendant, upon the grounds: (1) it does not set out a valid or legal defense to plaintiff's action; (2) it shows by its admissions affirmatively that plaintiff is entitled to a verdict for specific performance; (3) it should set out the reasons why the tender therein mentioned was not unconditional. This demurrer was overruled. The plaintiff filed exceptions pendente lite to this judgment, and assigned error on these exceptions in this court.

Plaintiff amended her petition by alleging that the contract of sale signed by plaintiff through her agent, H. H. Jarrett, has been ratified by her both as to its execution by said agent and as to the change of date of maturity of the loan of $4,000. After the execution of said contract by defendant, her ratification of it with the change made therein was made known to defendant, her attorney, and her agents, Evans & Dodd, by plaintiff's agent, H. H. Jarrett, and by plaintiff's attorney. Such ratification was also made known by the tender made to the defendant and her attorney on May 8, 1920, by plaintiff's attorney. Plaintiff has always been ready to comply with the terms of said contract since its execution, and has ratified it in every manner possible and now ratifies and confirms it and everything done in connection with it by her agent, H. H. Jarrett, and by defendant's agent, Evans & Dodd.

On June 28, 1920, in open court, before his honor, Judge Pendleton, she made another certain and unconditional tender to the defendant of the sum of $7,000 in United States currency and three notes as a payment on the property as set out in said contract.

On October 29, 1920, the defendant amended paragraph 7 of her answer, as follows: that the tender alleged therein was not unconditional, but was conditional upon this defendant's accepting the agreement on the part of the plaintiff to pay off and discharge the mortgage referred to in the contract of sale on April 28, 1921, instead of January, 1920.

The jury trying the case returned a verdict in favor of the plaintiff, for specific performance; and further found that plaintiff is entitled to recover rents from May 8, 1920, to and including November 4, 1920, in the sum of $2,205.93, less operating expenses covering the same period. The defendant made a motion for new trial which, as amended, was overruled, and error is assigned on this judgment.

On the trial it appeared that the plaintiff and her son, H. H. Jarrett, with Dodd, of the firm of Evans & Dodd, drove by the Fraser Apartments. Plaintiff was so impressed with it from the outside that they asked Dodd to go in and see what price he could get on it, which he did. They then went to the office of Evans & Dodd and drew up the offer of purchase in duplicate, both drafts of which were signed by the plaintiff, by her son as agent. Dodd then took this written offer to the defendant, who declined to sign the same unless the purchaser would pay the Ayer loan of $4,000.00 in January, 1921. In this offer as originally signed there was a provision that the purchaser would assume this loan " due in about a year and a half." Dodd then struck out the words, " about a year and a half," and inserted in lieu of these words, " January, 1921." With this change the defendant signed the acceptance of the contract, as shown in the copy above set out. At the time Dodd made this change in this offer he did so without any authority from the plaintiff. After the plaintiff had accepted the offer as changed, Dodd, on the evening of the same day, informed the plaintiff that he had made this change in the original offer. The plaintiff orally confirmed and ratified this change, but did not do so in writing.

*W. O. Wilson,* for plaintiff in error. *T. B. Higdon,* contra.

HINES, J. (After stating the foregoing facts). The plaintiff in error contends that the contract, which the plaintiff seeks to have specifically performed, can not be enforced, (1) because the offer by the plaintiff was not accepted by her absolutely and unequivocally, but was changed before acceptance by her, was not accepted by the defendant, and was therefore not binding on the latter; (2) because the parties to said contract never agreed to the same, at the same time and in the same sense, their minds not meeting; (3) because the offer was to be accepted by her before the end of April 20, 1920, and, having been changed, no acceptance thereof as altered was ever made during the time limit fixed therein; (4) because the original contract of sale was in writing as required by the statute of frauds, and, having been changed, was never ratified in writing by the purchaser, and therefore was never a binding contract; (5) because the alleged verbal ratification thereof by the purchaser was not made in the time limit fixed by the contract; (6) because this contract, not having been ratified in writing by the purchaser, was a unilateral one, not binding alike on

each of the parties, the purchaser being at liberty to reject the same if she wished; (7) because the contract, not being ratified in writing by the plaintiff, was merely a verbal contract for the sale of land, and hence is void under the statute of frauds.

The plaintiff made an offer in writing to buy from the defendant the Fraser Apartments in the city of Atlanta. This offer was signed by the plaintiff through an agent. This agent was not authorized by the plaintiff in writing to execute in her behalf this written offer. The defendant declined to accept this offer upon the terms therein set out, when presented to her by the real-estate agent who was negotiating this sale; but she agreed to accept the same, if the plaintiff would agree to pay the second loan of $4,000 on this property in January, 1921. This offer, when originally executed, contained this provision, to wit: " Assumption of a loan due in about a year and a half, at 8%, $4,000." The real-estate agent then struck from said provision the words " a year and a half," and inserted in lieu thereof the words " January, 1921." The plaintiff then signed the written acceptance of this offer as thus changed. Thereupon the real-estate agent telephoned to the plaintiff's son that he had made this change. The son communicated this information to his mother, who verbally confirmed and ratified this change. Will a court of equity decline to decree specific performance of this contract, against any of the grounds of attack thereon which are fully set out above?

1. Under our statute of frauds any contract for the sale of lands, to be binding upon the promisor, " must be in writing, signed by the party to be charged therewith, or by some person by him lawfully authorized." Civil Code, § 3222. Under this statute, if the contract of sale is otherwise sufficient, and is assented to by him to whom the proposition has been made, the contract is consummated by the meeting of the minds of the two parties, and the evidence necessary to render it valid and capable of enforcement is supplied by the signature of the party sought to be charged by the offer to sell or to buy. Ullsperger v. Meyer, 217 Ill. 262 (75 N. E. 482, 2 L. R. A. (N. S.) 221); Curtis v. Blair, 26 Miss. 309; Willis v. Ellis, 98 Miss. 197 (53 So. 498, Ann. Cas. 1913A, 1039); Mason v. Decker, 72 N. Y. 595 (28 Am. R. 190); Lee v. Cherry, 85 Tenn. 707 (4 S. W. 835, 4 Am. St. R. 800);

Bailey *v*. Lieshman, 32 Utah, 123 (89 Pac. 78, 13 Ann. Cas. 1116); Woodruff *v*. Woodruff, 44 N. J. Eq. 349 (16 Atl. 4, 1 L. R. A. 380); Miller *v*. Cameron, 45 N. J. Eq. 95 (15 Atl. 842, 1 L. R. A. 554); Johnston *v*. Tripp, 33 Fed. 530.

The general rule is that the memorandum need only be signed by the party against whom the contract is sought to be enforced. If a contract for the sale of lands is signed by the vendor alone, who is the party seeking to enforce the same, it will not be sufficient to bind the purchaser who has not signed the same. The same is true where the contract is signed by the buyer only, and he seeks to enforce the contract against the vendor. If a contract is duly signed by the vendor, it is not a good objection that it was not signed by the purchaser who is seeking to enforce the contract. If a contract for the sale of lands is signed by the purchaser, it may be enforced by the seller, though not signed by him; and vice versa, if the contract is signed by the vendor it may be enforced against him by the purchaser, though not signed by the latter. 25 R. C. L. 669, 670, 671, 672, §§ 305, 306, 307, 308; 1 Williston on Contracts, § 586. This court has stated the rule thus: " If a cóntract for the sale of land, required by the statute of frauds to be in writing, is evidenced by a writing signed by one party only, but sufficient to charge the party signing, such party would be bound to perform the contract. While in such a contract there is want of mutuality of obligation, still if the party in whose favor the writing is executed, though not bound because it is not signed by him, sees proper to waive his right to insist upon the invalidity of the contract, and as evidence of such waiver files a proceeding in a court of equity to enforce it, thus affirming in writing his willingness to be bound by the stipulations in the contract, he will by such proceeding, though previously not bound, put himself under the obligation of the contract. The contract then ceases to be unilateral; for by the act of the party who was in no way originally bound by the writing the contract becomes mutual, and the other party is thereby enabled to enforce it against him." *Perry* v. *Paschal*, 103 *Ga*. 134, 137 (29 S. E. 703); *Linton* v. *Williams*, 25 *Ga*. 394; *Talley* v. *So. Real Estate &c. Co.*, 152 *Ga*. 277 (109 S. E. 497). This disposes of most of the objections urged against the validity of this contract. The contract is sought to be enforced against the defendant who signed it.

29

The original offer may not have been valid under the statute of frauds, because it was executed in behalf of the principal by an agent not duly authorized in writing to sign the same; but this defect is waived by the plaintiff in bringing her suit for its specific performance. After the offer was changed by an agent at the direction of the plaintiff, in order to meet the requirements of the defendant, the lack of proper authority of the agent to make such change has likewise been waived by the plaintiff in bringing this suit. Acceptance by the plaintiff of the contract as thus changed need not have been in writing. 25 R. C. L. 674, § 311. When this change was made at the instance of the defendant, and she thereafter accepted in writing the offer as made, it was tantamount to a counter-offer by her to the plaintiff, and its acceptance by the latter need not have been in writing. When this change was made at the instance of the defendant, and she thereafter accepted the contract as changed, she is estopped from denying its validity. When the contract thus changed was presented to the defendant for acceptance, as embodying the terms upon which the plaintiff could buy this property, and she accepted the contract thus changed, the minds of the parties met, both agreeing to the same thing, at the same time. So none of the objections urged by the defendant to the validity of this contract are well taken.

2. The offer of the buyer must be accepted by the seller unequivocally, unconditionally, and without variance of any sort. There must be the mutual assent of the parties, and they must assent to the same thing in the same sense. *Robinson* v. *Weller,* 81 *Ga.* 704 (8 S. E. 447); *Harris* v. *Amoskeag Lumber Co.,* 97 *Ga.* 465 (25 S. E. 519); *Gray* v. *Lynn,* 139 *Ga.* 294 (77 S. E. 156); *Phinizy* v. *Bush,* 129 *Ga.* 479 (59 S. E. 259). So when this offer by the plaintiff to purchase this property from the defendant was made, the latter must have accepted the same unconditionally, in order to bind the plaintiff. She could not in her acceptance have changed the terms thereof, or added new terms thereto. But when she rejected the original offer and signified her willingness to sell if a material alteration was made in the original offer, and this was done at her request, and she then accepted the offer as changed, such acceptance was an unconditional and unequivocal acceptance, which would bind the defendant.

3. It is urged that the verdict is contrary to the law and evi-

dence, because the plaintiff did not make an unconditional tender of the cash payment which she was to make to the defendant under this contract, and of the notes which she was to give to the defendant for the deferred payments. Generally, in order to entitle the plaintiff to the specific performance of a contract for the purchase of land, the purchaser must make an unconditional tender of the purchase-money due, and of properly executed notes for deferred payments of the purchase-price, as called for by the contract of purchase. *DeGraffenreid* v. *Menard,* 103 *Ga.* 651 (30 S. E. 560); *Elder* v. *Johnson,* 115 *Ga.* 691 (42 S. E. 51); *Terry* v. *Keim,* 122 *Ga.* 43 (49 S. E. 736); *Grace* v. *Means,* 129 *Ga.* 638 (59 S. E. 811); *Martin* v. *Thompson,* 141 *Ga.* 31 (80 S. E. 318); *Burkhalter* v. *Roach,* 142 *Ga.* 344 (82 S. E. 1059). But tender by the vendee before suit is excused if the vendor, by conduct or declaration, proclaims that, if a tender should be made, acceptance would be refused. *Miller* v. *Watson,* 139 *Ga.* 29 (76 S. E. 585); *Burkhalter* v. *Roach,* supra. It appears from the evidence in the record that the defendant declined to comply with her contract of sale, unless the plaintiff complied with certain terms not embraced in this contract; and this conduct on the part of the defendant would excuse the plaintiff from making the tender in accordance with the terms of the contract. Equity never requires a party to do a vain or useless thing before undertaking to assert his rights.

4. The plaintiff demurred to the answer of the defendant, upon the grounds fully set out in the statement of facts. The court overruled this demurrer, to which ruling the plaintiff filed her exceptions pendente lite, and she assigns error in this court thereon. In her petition the plaintiff alleged that she had made an unconditional tender of the cash payment on the purchase-money and of the notes required in this contract. In her answer as amended the defendant denied the making of an unconditional tender, and alleged that this tender was conditioned on her accepting the agreement of the plaintiff to pay off and discharge the Ayer loan, on April 28, instead of January, 1921. This raised an issue of fact to be tried by the jury; and for this reason, if for no other, the court did not err in overruling the plaintiff's demurrer, which was aimed at the whole of the answer.

5. Movant insists that the court erred in giving to the jury

four instructions. In the first of these charges the judge instructed the jury that if the contract of sale, signed by the plaintiff, was changed by Dodd, the agent conducting the negotiations, and if this change was communicated to the buyer, who assented thereto, this would constitute a ratification of the change, which would make the contract, so signed by the defendant, binding on the plaintiff, as if the change had been made before she signed; that it would not be necessary for the plaintiff to execute a new writing ratifying the act of the agent in making this change; and that her ratification could be by word of mouth and by her acts and conduct after she was informed of the change. We are not called upon to say whether this instruction embraces a correct statement of the law in reference to the ratification of this change made by the agent in this contract and its binding force on the maker, if it had been sought to enforce this contract against her; but, if erroneous, it did no harm to the defendant. The defendant was the party to be charged, and, as we have stated above, she would be bound by this contract as changed after she signed the same.

In another instruction the court charged the jury that if in this transaction Dodd was acting for both parties, and had authority from the plaintiff to purchase this apartment house on the terms set out in the contract of sale as originally drawn, then Dodd as the agent of the plaintiff had authority to make the change in the contract before it was signed by the defendant, that such change made by him would bind the plaintiff, and that therefore the contract, when signed by the defendant, would be binding upon both parties. Again expressing no opinion upon the question whether the plaintiff would be bound by this change, when made by the agent on her oral authority only, if suit had been brought thereon by the defendant to charge her, still it is not erroneous as to the defendant, as a finding that the defendant is bound by this contract is demanded as a matter of law.

Complaint is made of the charge of the court upon the subject of tender. On this subject the court instructed the jury, that, if the tender was made without any condition except a request that the defendant comply with the terms of the contract of sale, the plaintiff would be entitled to a verdict for specific performance. It is alleged that this instruction was error, because the terms of

the contract were in dispute, and the court did not instruct the jury what the contract of sale was, or what its terms were. There is no merit in this ground of objection to this charge. In passing we may say that this instruction was not entirely correct. A tender must be certain and unconditional, except for a receipt in full or delivery of the obligation. Civil Code, § 4322. This court has held that tender of the balance due on the purchase-money of land by the vendee, coupled with a condition that the vendor make and deliver to the vendee the conveyance called for by the bond for title, was not a valid and lawful tender. *De-Graffenreid* v. *Menard,* supra; *Elder* v. *Johnson,* supra; *Morris* v. *Continental Ins. Co.,* 116 *Ga.* 53 (42 S. E. 474); *Terry* v. *Keim,* supra; *Smith* v. *Tatum,* 140 *Ga.* 719 (79 S. E. 775); *Martin* v. *Thompson,* supra; *Burkhalter* v. *Roach,* supra.

A tender, coupled with the condition that the vendor comply with the terms of sale, was not an unconditional tender. Of course tender by the vendee before suit will be excused if the vendor, by conduct or declaration, evinces an intention that a tender, if made, would be refused. *Burkhalter* v. *Roach,* supra.

The last exception is to this instruction: " In construing this contract, it is the duty of the jury and of the court to so construe it as to bind both parties, where circumstances show their intention to be bound." It is alleged that this is error, for the reason that it is the duty of the court to construe this contract, and that to instruct the jury that it was their duty to construe it so as to bind both parties misled the jury. This instruction was not entirely accurate. The construction of a contract is a question for the court, unless some matter of fact is involved, such as the reading of an obscurely written word and such like things, which a jury must solve. Code § 4265. The court meant to tell the jury that the construction which will uphold a contract is to be preferred. Civil Code, § 4268 (3). But this inaccuracy would not require the grant of a new trial; as the court properly construed this contract, and as the plaintiff, under the facts in the record, is entitled to a decree for specific performance.

6. The jury rendered this verdict: " We, the jury, find for the plaintiff and for specific performance; and we further find plaintiff is entitled to receive rents due from May 8, 1920, in the amount of $2,205.93, less operating expenses covering same pe-

riod." The defendant excepts to this verdict, on the ground that it was the evident intention of the jury to reduce the amount of the money finding in favor of the plaintiff by some amount, which can not be ascertained from anything in the evidence or pleadings, and that for this reason it is void for vagueness and uncertainty. Is this verdict void for uncertainty? It is impossible to tell what amount the jury intended to allow the plaintiff as rents, as the gross sum of $2,205.93 was to be reduced by the expenses of operating this apartment from May 8, 1920, to the date of the verdict; and the part of the verdict finding a money verdict in favor of the plaintiff can not be upheld, for lack of certainty. *Whitley* v. *Baggett,* 104 *Ga.* 22 (30 S. E. 428). But it is insisted that the language, " less operating expenses covering the same period," for which rent was allowed, may be stricken as surplusage. This can only be done where superadded words are meaningless. *N. & S. St. R. Co.* v. *Crayton,* 86 *Ga.* 499 (12 S. E. 877). In the last-cited case the language, "·less freight," was treated as surplusage, because freight was not included in the controversy in that case. It is true that all surplusage in a verdict may be disregarded. " The maxim, ' utile per inutile non vitiatur,' saves " verdicts " from the taint of any ambiguity or uncertainty brought about by rejectable surplusage." *Peninsular Naval Stores Co.* v. *Stale,* 20 *Ga. App.* 501 (93 S. E. 159). We can not say that the matter of the expenses of operating these apartments was not involved in this controversy. Plaintiff prayed for a receiver to collect the rents of these apartments, and to apply these rents to payment of the interest on the loans on the property, insurance, and taxes; and prayed that the rents be given her from the date of her tender on May 8, 1920. She must mean by this the net and not the gross rents, as it is a matter of common knowledge that the gross rents of apartments are reduced by the expenses of operating them, including such items as wages of janitor, water and light rates, cost of coal, and such things.

A new trial is granted solely on the ground that the verdict is void for uncertainty in finding for the plaintiff a sum for rents, less expenses of operation, without fixing the amount of these expenses; but direction is given that the verdict for the plaintiff for specific performance stand, and that the next trial be confined to an accounting, as we are authorized to do under the Civil Code,

§ 6205, with costs against the defendant in error.

*Judgment reversed in part, and affirmed in part, with direction.*
*All the Justices concur.*