(No. 14896.—Reversed and remanded.)
EVA FERGUSON HARRIS, Defendant in Error, *vs.* FRANK
N. EICH, Plaintiff in Error.

*Opinion filed December 19, 1922—Rehearing denied Feb. 8, 1923.*

1. SPECIFIC PERFORMANCE—*complainant must allege and prove readiness and ability to perform his part of contract.* The party seeking the specific performance of a contract to convey land must allege and prove a readiness and ability to perform his part of the contract according to its terms.

2. SAME—*when decree for specific performance cannot be sustained.* A decree for specific performance based upon the alleged failure of the proposed vendor to furnish an abstract of title can not be sustained where it appears that an abstract of title was furnished by the vendor, as required by the contract, but that the vendee did not, though required by the contract, notify the vendor in writing of her acceptance of the title or of her objections to the abstract or of her election to waive objections to the title and take it as shown.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. GEORGE FRED RUSH, Judge, presiding.

HARRY W. STANDIDGE, for plaintiff in error.

I. B. PERLMAN, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The circuit court of Cook county entered a decree in favor of Eva Ferguson Harris against Frank N. Eich for the specific performance of a contract by the latter to convey to the former certain real estate in Cook county. The defendant has sued out a writ of error to reverse the decree.

The parties entered into a written contract on December 15, 1919, for the sale of the property in controversy. The contract required the plaintiff in error to furnish a certificate of title issued by the registrar of titles of Cook county, or complete merchantable abstract of title, or merchantable copy brought down to the date of the contract,

or merchantable title guaranty policy, within a reasonable time, and provided that the purchaser, if an abstract or copy were furnished, should within ten days after its receipt deliver to the vendor a note or memorandum in writing, signed by the purchaser or his attorney, specifying in detail the objections to the title, if any, or if none, stating in substance that the title was satisfactory. In case material defects were found in the title and not cured within sixty days after notice thereof, the contract should at the purchaser's option become null and void. The purchaser might, nevertheless, elect to take the title as it then was, provided she should have first given a written notice of such election within ten days after the expiration of the sixty days and tendered performance thereof on her part. In default of such notice of election to perform and tender within the time, the purchaser should, without further action by either party, be deemed to have abandoned her claim upon the premises and the contract should thereupon cease to have any force. It was alleged in the bill that the defendant never furnished the certificate of title or merchantable abstract or merchantable copy or merchantable title guaranty policy; that complainant has always been willing and able to comply with the terms of the contract on her part, and on February 25, 1920, offered to pay and tendered the defendant the balance due under the agreement on the delivery to her of a sufficient warranty deed for the premises according to the agreement, but defendant refused to comply with the agreement on his part. The answer denies the failure of the defendant to furnish the abstract of title required by the contract, and avers that on December 16, 1919, he delivered to the complainant a complete merchantable abstract covering the property described in the bill, in accordance with the provisions of the contract. It denies that the complainant has always been ready to comply with the terms of the contract, or that on February 25, 1920, she offered and tendered him the balance then due under the contract.

The evidence shows that Benjamin Harris, the husband of the complainant, conducted the transaction on the part of his wife as her agent, and that at the time the contract was signed the defendant gave him an order on the holder of a trust deed upon the property for the delivery of the abstract of title, and that Harris agreed that he would have it extended at his own expense. The abstract was delivered to him the next day and was taken by him to the Home Bank and Trust Company, from which he expected to procure a loan. The bank ordered an opinion from the Chicago Title and Trust Company about the middle of January, which it received on January 29, 1920. Harris testified that about February 5 or 6 he called Eich on the telephone and asked him if he wanted to close the deal. Eich said not for three or four days and that he would let Harris know. Five or six days later Harris went to Eich's house and asked him when he would close the deal, and Eich told him he would let him know in a day or two. After that Harris called Eich again and asked him what he wanted to do, and Eich asked him to come over the next morning. He did so, and Eich said he was having trouble with the plumbing and as soon as he got through he would let Harris know. A few days later, on February 18, Harris testified, Eich called him up and said if Harris wanted to close the deal that day it was all right, otherwise Eich was not going through with the deal. Harris said that he wanted to arrange for the money, and Eich said to meet him at the bank between two and three o'clock; that they would close it that day at the bank. Harris met him at the bank, but when Fass, who had charge of the negotiation of the loan, came, he said he was not prepared that day and had no money prepared. Eich said he would be there the following morning, but he did not come. He had some business to attend to, and said he would get in on Saturday or Sunday morning. On Sunday morning Eich called up and said that the deal was off,—that Harris had had plenty of time. The next Tues-

day evening Harris went with Fass, taking $4500 in currency and a written notice which he served on Eich, offering him the money. Eich said that he did not want the money,—that he would not sell at that price. The bill for specific performance was filed on March 18, 1920.

The notice which was served on the plaintiff in error recited the contract and its provisions in regard to the purchase price and its payment, together with the requirement that a certificate of title, abstract or merchantable copy or merchantable title guaranty policy should be furnished by the vendor within a reasonable time. It further recited that no such document had been furnished since the making of the contract; that the purchaser had been ready at all times to carry out her part of the contract; that the plaintiff in error was in default in the carrying out of his part of the contract, "among other things, in furnishing the certificate of title or merchantable abstract, etc., to date of said contract, as required by said contract;" that the purchaser was ready to perform on her part all the terms of the contract, to pay the cash balance and to assume the mortgage indebtedness, rents, interest and insurance to be rebated, upon, "at and whenever you perform your part of said contract." The written notice then proceeded: "Now, therefore, you are notified that I stand ready, able and willing to perform my part of the said contract and to carry out and hereby offer and tender you to perform all the conditions thereof; that you will without unreasonable delay perform your part of the said contract; and that unless you do perform the said contract on your part without any further unnecessary delay, I shall take appropriate action as provided for by law."

The party seeking the specific performance of a contract to convey land must allege and prove a readiness and ability to perform his part of the contract according to its terms. The plaintiff in error was not bound to convey to the defendant in error except upon payment of the purchase money. The defendant in error had not notified the plain-

tiff in error of any defect in the title which she required
to be cured, and had not notified him, as provided in the
contract, that she would take the title as it then was, and
she did not make an unconditional tender of the money
due from her upon a delivery of the deed. Her tender of
performance recited the default of the plaintiff in error in
the one particular of failing to furnish the abstract of title
as required by the contract, and her tender of payment was
upon condition that the plaintiff in error perform his part
of the contract. This, of course, referred to the furnishing
of the abstract of title as well as the execution of the deed.

In *Miller* v. *Shea,* 300 Ill. 180, a contract for the pur-
chase of real estate required the vendee to return the vend-
ors' abstract with his objections, and gave him the option
to waive defects if the vendors failed to have them reme-
died within sixty days, provided he notified the vendors of
his intention to accept the title as shown, and it was held
the vendors could not be put in default for not conveying
the title as shown by the abstract until they were notified
that the vendee had elected to accept it, and that the filing
of a bill to compel a conveyance after a written demand
calling attention to the alleged defects and insisting that
the vendors carry out their part of the contract was not
an election to accept the title.

In *Mitchell* v. *White,* 295 Ill. 135, a contract for the
exchange of land provided that in case either party could
not make complete title the other should have the option,
on giving notice, to either abandon the contract or take the
title as it was, and it was held that a failure by one party
to make an election when the other party was unable to
make his title good within the time fixed by the contract
precluded the right to specific performance.

In this case the plaintiff in error was not in default for
failing to furnish an abstract of title, as recited in the de-
fendant in error's notice. He was under no obligation to
furnish another abstract. The defendant in error's demand

of performance was based upon the statement that the plaintiff in error was in default, and her tender of payment was based upon the condition that he should perform the part of the contract in which he was alleged to be in default. It was therefore based upon a condition which the defendant in error had no right to impose and could not be made the basis for a decree of specific performance as was done in the decree in this case, which requires that the defendant shall, within five days from the entry of the decree, and within a reasonable time thereafter, at his cost and expense furnish the complainant with either an abstract, certificate of Torrens title or guaranty policy, as provided in the contract.

The decree will be reversed and the cause remanded, with directions to dismiss the bill.

*Reversed and remanded, with directions.*