## CRAIG v. CHISHOLM.

No. 26953.   March 22, 1938.

Rehearing Denied Sept. 27, 1938.

Blanton, Curtis & Blanton, O. W. Patchell, and Marion Henderson, for plaintiff in error.

Marvin Shilling and Sam J. Goodwin, for defendant in error.

GIBSON, J.   The parties to this appeal on June 9, 1934, entered into a contract by which the plaintiff in error, E. F. Craig, agreed to sell certain real estate to Mrs. Bertha Chisholm. Mrs. Chisholm contended that she properly tendered performance of the contract, and, when Craig refused to convey, brought suit and obtained a decree for specific performance. Craig is appealing from that decree.

The contract is in writing. The essential terms thereof provide that Craig contracted and agreed with Mrs. Chisholm to sell and convey to her certain real estate "for consideration of $10,000 to be paid in the following manner, $2,000 in cash, and the remaining $8,000 on or before July 1, 1934—

"It is further agreed that if the party of the first part pays the $2,000 on this date,

and elects not to pay the $8,000 on or before July 1, 1934, that she will pay the $8,000 together with $350 for the use of said premises for the remainder of the year 1934, on or before December 31, 1934, and thereupon the party of the first part will convey said premises to party of second part by good and sufficient warranty deed, conveying a good and perfect title, subject to the taxes for the year 1934; that in case the party of the second part makes the $2,000 payment on this date, she agrees to enter into a written rental contract whereby she rents said premises of party of the first part for the remainder of the year 1934, at a rental of $350, payable on or before December 31, 1934, and if she fails to make the payment of $8,000 in that event upon delivery of possession of said premises to party of first part by party of the second part, he agrees to release her from the payment of the said rental of $350. Unless said payment of $2,000 is this day made and the payment of $8,000 together with the $350 is made on or before December 31, 1934, then in that event all rights of the party of the second part under the terms of this contract shall thereby become terminated, and of no further force or effect, and in that event the party of the second part agrees to surrender possession of said premises to party of the first part which she rents on this date of party of the first part for the remainder of the year 1934, on the said 31st day of December, 1934.

"It is further agreed that party of the second part shall not be let into possession of said premises under the terms of this contract, but her possession shall be wholly attributable to, and held under the terms of the rental contract which she enters into on this date with the party of the first part, and she shall at all times until said final payments are made in fact and in law by the tenant of the party of the first part under the terms of said written rental contract and shall not at any time before said payments are made in full be deemed a purchaser in possession of said premises.

"It is further agreed that this contract shall not be renewed, extended or in any manner modified, or any of its terms waived, except in writing, signed by the parties hereto.

"Time shall be of the essence of this contract. * * *"

An examination of the case of Anthis v. Sandlin, 149 Okla. 126, 299 P. 458, in connection with this contract leads to the conclusion that when Mrs. Chisholm exercised her option by making the down payment of $2,000, the agreement became then a contract for sale, with time the essence thereof,— a contract for sale in the future in which Mrs. Chisholm had several courses she could pursue in order to become the owner of the property and some definite things she was required to do before she could claim the right to her deed and consequent ownership.

The consideration is definite; $10,000, consisting of $2,000 down payment, and $8,000 deferred payment to be paid at either one of two definitely stated periods; the first on or before July 1, 1934; the second on or before December 31, 1934. She had the election to take either date; the rights and obligations arising from the contract in each case then would be as follows:

She became the renter of the seller for the year 1934 for a consideration of $350. If she paid the $8,000 by July 1, 1934, then, of course, the rental contract became invalid. If she did not so pay, her rights then became these: She could deliver up possession of the premises and be relieved both from the rental contract and the obligation to pay the $8,000. The contract admits of this construction only, viz., that if she at any time on or before the 31st day of December, 1934, elected not to proceed further, she could surrender possession and terminate the contract, without paying either the $350 or the $8,000. If she did elect to continue the contract, she had to pay both the $8,000 and $350 on or before December 31, 1934. If she did not pay the $8,000 and $350 on or before said December 31, 1934, her rights terminated.

Under the contract the seller was not bound to do anything except to deliver a warranty deed conveying a good and perfect title, and was required to do this only when payment was made. He could not have before December 31, 1934, placed any obligation upon the buyer. If he had tendered a deed to the buyer on December 31, 1934, he could not thereby have made her liable for breach of the contract or for performance. She had all day December 31, 1934, to do one of two things—either to make payment or to surrender possession without payment. If she did neither of these two things, then the only enforceable obligation in the agreement, so far as the seller was concerned, was to oust her from possession (her tenancy expired by contract without notice on December 31, 1934) and to sue her for the $350 rent.

In her pleading she alleged that she tendered the defendant the sum of $8,000 and that she still tenders such sum. This is not in accord with the contract. It specifically states that both the $8,000 and the $350 are to be paid before the defendant must deliver a deed. This amount is the proper amount to

be tendered because of the election of plaintiff not to pay by July 1st. By so electing she agreed: First, "that she will pay the $8,000 together with $350 * * * on or before December 31, 1934, and thereupon the party of the first part will convey," etc.; and, second, "unless * * * the payment of $8,000 together with the $350 is made on or before December 31, 1934, then and in that event all rights of the party of the second part * * * shall thereby become terminated." If, therefore, as she alleges, the $8,000 was the amount which she tendered or offered or was ready to pay, she was not entitled to performance.

While she testified that on December 31, 1934, she met the vendor and told him she had come to town to fix everything and that she was ready to settle, yet she admitted, in answer to questions by her own attorney, that she did not then have the money to pay; that she had arranged with a Mr. Tolbert to get the money if she got the abstract so he could look at it "to see if the title was in good shape." Her counsel inquired of her: "So you were in that condition at the time that you called on Mr. Craig on the 31st day of December, 1934?" To which she responded: "Yes." We do not now consider the testimony of Mr. Tolbert, her witness, that he had no such agreement with her; that he tried to negotiate a trade, but that she and her brother did not agree to his terms.

It appears conclusively that she was, by her own testimony, not ready and able to perform, but that her ability to perform depended upon (1) her receiving the abstract; (2) having it brought to date; (3) title accepted by Mr. Tolbert; (4) and delivery of the money to her by Mr. Tolbert. All of these things would have to be completed within the time remaining after 1:30 p. m. that day (the time she said she met Craig on December 31, 1934). It may have been possible, of course, to do all this, but the point is that, under her own statement, she was not ready and able to perform at the time she claims to have put the defendant in default, but she was required to do a series of acts before she could be so ready and able. If Mr. Tolbert had already examined the abstract, or had agreed to take the title without examination, a different question would be presented, but under her own testimony he had not agreed to that, but required an examination of title before he would pay her.

Of course, if Mr. Tolbert's testimony is true, there was no agreement made by him

to pay, since she had not accepted his terms, but was just negotiating for a trade.

Furthermore, she did not unconditionally offer to perform (assuming that she had the money in hand or available). According to her own statement she told the vendor that she was ready to settle with him **if he got his abstract brought down to date.** Her testimony on this point is in part as follows:

"Q. Were you able at that time to pay him the money, to pay the money to him upon the defendant furnishing the abstract of title? A. Yes, sir. * * * I told him to get the * * * deed and abstract and everything down to date, I was ready and willing to close. Q. Upon his furnishing an abstract. furnishing a good and valid title and furnishing an abstract, are you now ready and able to pay him the money? A. Yes, sir."

She admitted that she had no agreement with the defendant that he would furnish an abstract, and the contract does not call for an abstract. The trial court in its decree requires Craig to furnish abstract of title before the payment of the money.

In a suit for specific performance, whether or not defendant is entitled to rescind and forfeit the contract is immaterial, since plaintiff must recover, if at all, upon the strength of his own case and not upon the weakness of the defense. Smith v. Barber (Wash.) 165 P. 873.

It does not matter, for the purposes of this case, whether the contract be denominated an option or a contract of sale, since, in either case, time was made the essence thereof, and a particular thing was required to be done before plaintiff could enforce any rights thereunder. Certainly it was not a complete sale. At most, it was only a contract to convey by deed when the vendee should perform the conditions specified. There was something to be done by each party before there could be a complete sale. Mrs. Chisholm was to pay in the future definite sums of money. Then, on the payment of the money, Mr. Craig was to deliver the deed. See Stewart v. Fowler (Kan.) 15 P. 918; Tieton Hotel Co. v. Manheim (Wash.) 135 P. 658. It is not different in principle from those executory contracts of sale where part of the purchase price is paid, with installments to be made in the future at definite times and in definite amounts, where time has been made the essence of the contract. In such cases a noncompliance by the vendee by failure to make payments has put an end to the contract and any rights the vendee has had therein. Standard Lumber Co. v. Miller

& Vidor Lumber Co., 21 Okla. 617, 96 P. 761; Hamra v. Mitchell, 133 Okla. 264, 271 P. 1042; Livengood v. Ball, 63 Okla. 90, 162 P. 766.

It is not necessary, in this connection, to decide whether actual payment or actual tender of payment is necessary. Under the evidence it is clear that plaintiff did not have the ability to pay. She did not have the money and could not have obtained it without complying with conditions which she failed to prove could have been complied with in time to meet the terms of the contract.

Furthermore, her alleged tender of performance was not unconditional. She offered to perform only if the defendant would bring his abstract down to date. The contract did not call for the furnishing of an abstract. Mrs. Chisholm testified that she had no agreement whereby Craig was to furnish an abstract.

"In this country the general rule is that. in the absence of a specific agreement therefor, the vendor is not required to furnish an abstract showing the condition of his title." Baker v. Howison (Ala.) 104 So. 239, and cases cited 52 A. L. R. p. 1452, with note.

Her testimony and Mr. Tolbert's, as a whole, show that she was expecting to reconvey the property to him for enough to pay off Craig, and leave her a part of the land.

"A purchaser of land has no right to a decree for specific performance unless he has, prior to the time of the filing of his bill, done everything necessary to give him the right to demand a deed without anything further being done on his part. * * * Appellant paid no money and tendered none to appellee. It is evident that he had no expectation of carrying out this contract until he had found some purchaser to take the land off his hands, and that he expected to pay the appellee for the land with the funds derived from the resale of it. Such does not constitute a tender or performance on his part." Willhite v. Schurtz (Ill.) 128 N. E. 551.

"A party seeking the specific performance of a contract to convey land must allege and prove a readiness and ability to perform his part of the contract according to its terms. The plaintiff in error was not bound to convey to the defendant in error, except upon payment of the purchase money. The defendant in error had not notified the plaintiff in error of any defect in the title which she required to be cured, and had not notified him, as provided in the contract, that she would take the title as it then was, and she did not make an unconditional tender of the money due from her upon a delivery of the deed. Her tender of performance recited the default of the plaintiff in error in the one particular of failing to furnish the abstract of title as required by the contract, and her tender of payment was upon condition that the plaintiff in error perform his part of the contract. This, of course, referred to the furnishing of the abstract of title as well as the execution of the deed. * * * Her tender of payment was based upon the condition that he should perform the part of the contract in which he was alleged to be in default. It was therefore based upon a condition which the defendant in error had no right to impose, and could not be made the basis for a decree of specific performance as was done in the decree in this case." Harris v. Eich (Ill.) 137 N. E. 804.

See, also, Fraser v. Jarrett (Ga.) 112 S. E. 487.

But even if she had the right to examine the abstract, she had no right to wait until the afternoon of the last day for that purpose. The contract was made in June, nearly seven months before.

"Since the contract of purchase did not provide a time within which the abstract should be examined, it was the duty of the plaintiff to cause it to be examined promptly and to either accept or reject the title promptly." Nelson v. Hamra, 127 Okla. 141, 259 P. 838.

Her testimony fails to show that the defendant in any way waived his rights in the matter. Some states hold to the rule that in a case of this kind it is incumbent upon the purchaser to prepare and offer for execution the kind of deed he desires. See Alabama case, supra. Be that as it may, it is evident from the contract here that the payment was to precede the delivery of the deed, or at least be contemporaneous with delivery. It is not like some contracts where provision is made for payment of the purchase price upon delivery of the deed. There was no refusal on his part to perform, and within three days he offered her a deed which she refused to accept because she had no one to examine the papers and conditions had changed. A few days later she attempted to take advantage of the Frazier-Lemke Act, and only after that failed did she seek performance in this case.

The defendant was not in default for not furnishing her with the abstract. She testified she had seen Mr. Tolbert two days before. She could have asked for the abstract then and perhaps have had his decision in time to be ready and able to perform. But certainly when she admits that she had to have the abstract in order to

satisfy him of the condition of the title, she destroys her own assertion that she was ready and able to perform. The court's finding on this point is directly contrary to the evidence.

Furthermore, the court's finding that the defendant never tendered her an abstract for examination is nullified by the court's further finding that the defendant submitted an abstract of title to her attorney on or about the date of the contract. The defendant certainly was not bound to submit an abstract to Mr. Tolbert. She had ample time to examine the abstract and prepare the deed she wanted before December 31, 1934. She had no right to demand anything further in reference to the title that long after the abstract had been submitted. Her duty was to pay and receive her deed.

The trial court found, contrary to the evidence of plaintiff, that she did agree with Mr. Craig on December 31, 1934, to meet him on January 2, 1935, to close the deal; that she did not intend to come back and did not come back on that day; that on January 3, 1935, Craig sought her out, tendered the deed, but that she then said conditions had changed. Further, the court found that on said 3rd day of January, 1935, she was not in position to pay. On the 7th she filed her "Frazier-Lemke" petition in the federal court.

Certainly there is nothing in these findings that indicates Craig waived performance, declined to perform, or otherwise excused the plaintiff from performance.

The agreement to wait over the holiday and close the deal on the 2nd was not a waiver. 66 C. J. 700 (Vendor and Purchaser). This merely substituted January 2, 1935, for December 31, 1934. Mansfield v. Redding (Pa.) 112 Atl. 437; Machold v. Farnan (Idaho) 94 P. 170; Benton v. Davison (S. D.) 212 N. W. 500.

The laches here, if any, was on the part of the plaintiff in not having her lawyer examine the abstract, or in waiting until the last minute to try to obtain an abstract for Mr. Tolbert to examine, and was not on the part of Mr. Craig, who was under no contractual duty to furnish an abstract at all, but who did furnish one in ample time for examination.

The decision of the trial court is reversed, with directions to enter judgment for defendant.

OSBORN, C. J., and PHELPS, CORN, HURST, and DAVISON, JJ., concur. BAYLESS, V. C. J., and RILEY, J., dissent. WELCH, J., absent.